UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAUN JACKSON DESIGN, INC.
D/B/A HIGHER GROUND GEAR,

       Plaintiff,                Case Number 15-12005
                                          Honorable David M. Lawson
v.

MOHAWK USA LLC,

       Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
TO DISMISS OR TRANSFER VENUE**

The plaintiff, a designer and seller of laptop cases, sued defendant Mohawk USA, LLC, a Connecticut-based competitor, for trade dress infringement, unfair competition, violations of the Michigan Consumer Protection Act, tortious interference, and unjust enrichment. The defendant has moved to dismiss, alleging that the Court lacks personal jurisdiction, the case is brought in the wrong venue, or alternatively the case should be transferred to Connecticut. The motion will be denied because the defendant's Michigan-directed activity, including maintenance of an interactive website, sending allegedly infringing product samples into Michigan, and arranging for representation at a trade show in Detroit, provides a basis for specific personal jurisdiction, with venue proper in this district.

I.

According to the complaint, the plaintiff designs, produces, and sells laptop computer cases and related products for the education market. Three of its most popular products are the Flak Jacket laptop case, the Flak Jacket Plus laptop case, and the Shuttle 2.1 laptop case (collectively called

"Higher Ground cases"). The plaintiff markets, advertises, and sells its products through various avenues, including at education fairs and on the Internet through its website.

The plaintiff alleges that in 2014, the defendant began advertising, marketing, and selling laptop cases that copied the Higher Ground cases. The defendant displayed and sold laptop cases that allegedly infringed the plaintiff's trade dress at a popular and well-attended trade show in Atlanta, Georgia in 2014.

The defendant furnished an affidavit that avers that its headquarters is in New Milford, Connecticut, the only city in which it has offices. The defendant maintains a website which can be accessed from anywhere. However, the defendant takes the position that orders cannot be made through the website, a claim that the plaintiff disputes, and, according to the Court's own inquiry, has proven false.

The defendant also avers that it has never had an office in Michigan; it has never had employees located in Michigan; it does not own any property in Michigan; it does not have any bank accounts located in Michigan; it has never been registered with the State of Michigan to do business in Michigan; it has never reached out to Michigan specifically to market its products; and it was not served in Michigan with the summons and complaint in this action. The plaintiff does not appear to dispute any of these facts.

However, the plaintiff filed an affidavit asserting that in 2015, the defendant marketed, advertised, and sold its infringing cases at the Michigan Association for Computer Users in Learning trade show (MACUL) in Detroit, Michigan. Additionally, the plaintiff avers that the defendant has been selling the infringing products on its Facebook page, Twitter account, and Pinterest page. The

plaintiff alleges that the defendant advertises, markets, and sells the infringing cases in several states, which is likely to have a substantial economic effect on interstate commerce.

The defendant concedes that it attends conferences and trade shows to market its products, but contends it has never done so in Michigan. It acknowledges that it registered for the MACUL trade show in Detroit, Michigan, but it maintains that it never attended. The defendant alleges that is has had only three sales to three different customers in Michigan, only two of which occurred before the complaint was filed in this case, and none supposedly involved any of the infringing products.

The defendant admits that it sends its products to various entities or people who request them, at least two of which involved samples of allegedly infringing products sent to Michigan addresses upon request. The first request arose out of a contact the defendant made with a computer manufacturing company, Acer, at a Philadelphia trade show. The representative at the trade show did not buy or sell the products the defendant manufactures, but identified a handful of other Acer representatives to whom the defendant could send samples of its products. After the trade show, the defendant sent samples of its products to Acer representatives, including the one in Michigan. The defendant also acknowledged that, upon request, it sent products to a representative of the Port Huron schools. The defendant asserts that neither the Acer representative nor the Port Huron schools' representative purchased products from the defendant, and the plaintiff does not suggest otherwise.

The plaintiff's complaint alleges claims against Mohawk for (1) federal trade dress infringement; (2) unfair competition under Michigan common law; (3) violations of the Michigan Consumer Protection Act; (4) tortious interference with a contract of business relationship or

expectancy; and (5) unjust enrichment. The plaintiff is seeking injunctive relief, compensatory and actual damages, restitution, and costs and fees.

The defendant argues in its motion to dismiss that the Court lacks personal jurisdiction, the case should be dismissed or transferred under 28 U.S.C. § 1406(a) because venue is improper, and, if the Court finds personal jurisdiction and that venue is proper, it should transfer this case to the District of Connecticut in the interest of justice under 28 U.S.C. 1404(a). The Court heard oral argument on October 21, 2015.

II.

A. Personal Jurisdiction

When personal jurisdiction is challenged in a motion filed under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the Court's authority to proceed against the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988); and *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)). When the motion is supported by properly documented factual assertions, the plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction." *Ibid.* The Court may opt to decide the motion based only on the affidavits, allow discovery of the jurisdictional facts, or, if factual disputes need resolving, hold an evidentiary hearing. *Ibid.* If a factual contest requires resort to the third option, the plaintiff must satisfy the preponderance of evidence standard of proof. Otherwise, the plaintiff need only present a *prima facie* case for personal jurisdiction, and the Court views the submissions in the light most

favorable to the plaintiff. *Id.* at 1458-59. The factual presentation in the present motion consists of competing affidavits; therefore, the *prima facie* standard of proof applies.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, --- U.S. ---, 134 S. Ct. 746, 753 (2014). Michigan law recognizes two bases for personal jurisdiction over unincorporated entities: general, Mich. Comp. Laws § 600.731, and specific (called "limited personal jurisdiction" in state law parlance), Mich. Comp. Laws § 600.735. Michigan's so-called Long Arm Statute defines the scope of its limited personal jurisdiction. But "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, --- U.S. ---, 134 S. Ct. 1115, 1121 (2014). Michigan interprets its Long Arm Statute to allow personal jurisdiction to extend to the limits imposed by the federal constitution. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992).

General jurisdiction allows a plaintiff to sue a defendant "on any and all claims against it, wherever in the world the claims may arise." *Daimler*, 134 S. Ct. at 751. The plaintiff does not suggest a basis for asserting such judicial authority in this case. "'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy (i.e., an 'activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation')." *Walden*, 134 S. Ct. at 1122 n.6 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, --- U.S. ---, 131 S. Ct. 2846, 2851 (2011)).

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 1121. "Thus, in order to determine whether the [Court is] authorized to exercise jurisdiction over [the defendant], we ask

whether the exercise of jurisdiction 'comports with the limits imposed by federal due process' on the [forum state]." *Ibid.* (quoting *Daimler*, 134 S. Ct. at 753). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Ibid.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (alterations omitted). The Sixth Circuit historically has applied three criteria to guide the minimum contacts analysis, which it enunciated in *Southern Machine Company, Inc. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine*, 401 F.3d at 381.

### 1. Purposeful Availment

The Sixth Circuit "views the purposeful availment prong of the *Southern Machine* test as 'essential' to a finding of personal jurisdiction." *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000)). "Purposeful availment" occurs when "the defendant's contacts with the forum state 'proximately result from actions by the defendant himself that create a "substantial connection" with the forum State.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Physical presence within the state is not required to create such a connection. *Southern Machine*, 401 F.3d at 382. The Supreme Court has

"consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp.*, 471 U.S. at 476.

The defendant argues that it did not purposefully avail itself of the privilege of acting in Michigan because the few communications and one-off sales that occurred in Michigan are not enough to establish purposeful availment. The defendant argues, citing *Nationwide Mutual Insurance Co. v. Tryg International Insurance. Co.*, 91 F.3d 790 (6th Cir. 1996), and related cases, that the plaintiff must satisfy additional jurisdictional requirements related to its claims based on sales, contracts, purchase order, or mailing of samples related to Michigan customers. The plaintiff relies upon four types of conduct that it believes satisfy the purposeful availment requirement: (1) creating a nationwide interactive website; (2) using social media to advertise its products; (3) registering for the MACUL trade show in Detroit; and (4) sending infringing product samples to customers in Michigan.

"A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1124 (W.D. Pa.1997)). Courts have characterized websites according to the degree of their interactivity, describing them as "highly interactive" — "which is the ability to download and enter into contracts," and therefore will support personal jurisdiction; a "middle ground" — which allows some exchange of information and sometimes may justify exercising personal jurisdiction; and "passive" — which displays information only, and seldom will be sufficient "to establish purposeful availment for the purpose of due

process." *Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 742-43 (E.D. Mich. 2004); *see also Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 522 (6th Cir. 2006).

Here, the plaintiff alleges that orders may be placed through the defendant's website, and it has provided screen shots of the website's e-commerce functionality supported by an affidavit. The defendant, on the other hand, alleges that the website's e-commerce functions are non-operational, and reiterated that contention at oral argument. However, a visit to the website proved otherwise; orders could be placed by following the "buy now" link, which placed an IPad case in a shopping cart, leading to a call for personal and credit card information at checkout. Even if that were not the case, however, a court does not weigh "the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459. Instead, the court views the submissions in the light most favorable to the plaintiff. *Id.* at 1458-59.

In *Neogen*, a trademark infringement case, the court considered the defendant's interactive website along with other actions in finding purposeful availment. There, the defendant was a Pennsylvania corporation that provided diagnostic testing of blood samples through contracts to hospitals and governmental agencies around the world, none of which were located in Michigan. 282 F.3d at 886. The remainder of the defendant's business came from individual physicians or coroners with whom the defendant did not have prior contractual relationships. *Ibid*. Of the defendant's 215,000 tests in 1999, 14 were from Michigan coroners and the defendant expected to have a similar level of sales in subsequent years. *Id.* at 886-87. Customers could contact the defendant either by telephone or by email to request information and blood collection forms. *Id.* at 887. Once the results of a blood screening were available, the customer could receive the results through the mail or through the defendant's website using a password provided by the company.

*Ibid.* The *Neogen* court reasoned that providing passwords to Michigan residents for use on the defendant's website was an interactive usage that amounted to reaching out to Michigan residents. *Id*. at 890-91; *see also Bridgeport Music, Inc. v. Still N The Water Pub*., 327 F.3d 472, 484 (6th Cir. 2003) (finding purposeful availment where the defendant entered into a nationwide distribution contract and sold 66 of the allegedly infringing products on its website to customers in the forum state).

Additionally, the plaintiff in this case alleges that the defendant solicits sales from schools through the Bump Armor Pilot Program on its web page. In the Bump Armor Pilot Program application, an interested school may select Michigan from a drop down menu. Through that website, the defendant solicits business nationwide, like the defendants in *Neogen* and *Bridgeport*. That alone may not be sufficient to show that the defendant has purposefully availed itself of the privilege of conducting activities in Michigan. But that fact must be considered with other activities.

One such activity involved the defendant sending samples of its products to a representative of the Acer computer company in Michigan, which included the allegedly infringing products. That contact was originated when the defendant attended a trade show in Philadelphia. The defendant also sent samples to Port Huron Schools, which included the allegedly infringing products. The defendant minimizes the significance of these activities, contending that they did not lead to sales, and suggests that the contacts were so sporadic and isolated that they amount to nothing more than fortuitous events. The defendant reasons that the activities cannot count as purposeful availment because the Acer representative encouraged the defendant to send samples to a number of representatives throughout the country, and the interaction did not ultimately result in a sale; and

the Port Huron outreach was an isolated event that did not result in a sale or continuing relationship in Michigan.

The Court disagrees. There is no evidence that the defendant's contacts resulted from unsolicited inquiries from its potential Michigan customers. *See LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1989) (finding that the defendant's contacts with Michigan were "fortuitous" because the Michigan plaintiff reached out and made an unsolicited offer to the Indiana defendant to purchase property in Florida). Instead, the defendant in this case reached into Michigan by sending product samples to Acer and Port Huron schools. The defendant's argument that it was *encouraged* by the Acer representative at the Philadelphia trade show to send the samples is not the same as an unsolicited offer to buy property out of state. Trade shows are organized exhibitions sponsored by specific industries to showcase manufacturers' latest products in order to develop business relationships. Not surprisingly, the defendant met with a representative from Acer, one of the largest computer and electronic manufacturers in the world. The defendant manufactures and sells computer and electronic accessories. Sending samples to the Acer representative in Michigan was not fortuitous; it was the direct result of marketing its products at a trade show. The Acer representative did not unexpectedly reach out to the defendant creating a fortuitous business opportunity. On the contrary, it was the defendant who made the business contact at a trade show, and then followed up by reaching into Michigan by sending samples to the Michigan representative. Additionally, the defendant reached into Michigan when it sent samples to the Port Huron schools. The defendant alleges that the Port Huron schools requested the products from the defendant, but the defendant does not provide the details surrounding this alleged request.

It is unlikely that such a request could be characterized as fortuitous because the defendant specifically targets educational markets as evidenced by its Bump Armor Pilot Program.

The fact that neither contact resulted in a sale is immaterial to the purposeful availment analysis. The Sixth Circuit considers the "quality of the contacts, and not their number or status," to determine "whether they amount to purposeful availment." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) (internal quotation marks omitted). Here, the defendant deliberately reached into Michigan on two separate occasions with the allegedly infringing products and thus purposefully availed itself of the benefits of doing business in Michigan.

The plaintiff also avers that the allegedly infringing products were displayed at the MACUL trade show in Detroit. The defendant admits that it registered for the trade show, but contends that it did not attend. Although the two contentions are not entirely conflicting, the plaintiff's declaration makes clear that the affiant saw a booth that displayed a range of the defendant's products, including the allegedly infringing products, at a trade show in Detroit.

The defendant acknowledges that it attends trade shows across the country in order to generate business. Yet, the defendant does not explain why it did not attend the MACUL show after it registered for a booth. Nor does the defendant explain how its products came to be displayed at the MACUL show. Notably, the defendant does not argue that this was merely a fortuitous contact with Michigan. The defendant registered for the MACUL show, and its products were on display there, which the defendant does not deny. It appears that the defendant intended to take advantage of the Michigan educational market, whether on its own or through a distributor, by placing its products at a trade show in Detroit.

The defendant argues that the plaintiff must satisfy additional jurisdictional requirements based on the plaintiff's claims related to sales, contracts, purchase order, and mailing of samples, citing *Nationwide Mutual Insurance Co. v. Tryg International Insurance Co.* In *Nationwide*, the court explained that the foreign defendant's contacts with the forum state were a result of a contractual relationship between it and the plaintiff. 91 F.3d at 795-76. The court found that most of the contacts the plaintiff was alleging were actions taken by the plaintiff on the defendant's behalf as part of a large reinsurance pool. *Id*. at 776. However, this case does not involve a contractual relationship between the parties. The plaintiff's causes of action sound in tort, not contract. *Nationwide* provides no guidance on the question of purposeful availment.

Viewed in their entirety, the defendant's contacts with Michigan amount to purposeful availment, giving it "reason to foresee being 'haled before' a Michigan court." *Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d at 742 (citing *Sports Auth. Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 811 (E.D. Mich. 2000)).

2. Cause of Action Arising From Local Activities

The "arising from" prong is satisfied "when the operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon*, 228 F.3d at 723. "The law of this circuit is that the 'arising from' requirement is satisfied if the cause of action is 'related to' or 'connected with' the defendant's forum contacts." *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003).

The cause of action in this case arises, in part, from the defendant's attempt to market the allegedly infringing products in Michigan at a trade show in Detroit and to Michigan customers directly. The harm the plaintiff is alleging comes from customer confusion as a result of the defendant's contacts with Michigan. It is true that much of the alleged infringement occurred

-12-

throughout the United States. But because some allegedly occurred in Michigan, and "[i]n light of the lenient standard that applies when evaluating the 'arising from' criterion," *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002), the plaintiff's causes of action arise from the defendant's contacts with Michigan.

### 3. Reasonableness

If the first two elements are met, an "inference of reasonableness arises . . . [and] only the unusual case will not meet this third criterion." *Theunissen*, 935 F.2d at 1461 (internal quotation marks and citations omitted); *see also Intera Corp.*, 428 F.3d at 618. In the Sixth Circuit, courts also determine the reasonableness of exercising personal jurisdiction over a defendant by weighing several factors, including "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618. Regular business relationships with a forum, and plans to continue those relationships, can support a finding of reasonableness. *See Neogen*, 282 F.3d at 892 ("[The defendant] anticipates from year to year that it will conduct a given level of sales in Michigan. . . . Although [the defendant's contracts with] individual customers do not represent "continuing relationships and obligations" with those particular customers, its predictable yearly business in Michigan does represent such a continuing relationship with the state overall.").

None of these factors cuts against a finding of reasonableness. The defendant argues that representatives, witnesses, and evidence that might become part of the case would have to travel to Michigan from Connecticut, and it would be forced to defend itself from afar. That fact alone does not render unreasonable the plaintiff's prosecution of this lawsuit in Michigan. Certain discovery

can be exchanged electronically without the need for the defendant to travel to Michigan for each case event. Michigan has an interest in protecting its citizens from product confusion within the state. Under these circumstances, the exercise of personal jurisdiction over the defendant in Michigan would not offend traditional notions of fairness or substantial justice. Accordingly, it is reasonable for the Court to exercise personal jurisdiction over the defendant.

### B.  Venue

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1), (2). Otherwise, venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(c)(3). Plainly, the defendant does not reside in this district. The events giving rise to the infringement claims are alleged to have occurred throughout the United States, so it cannot be said that a "substantial part" of them occurred in any particular district. But because the Court has personal jurisdiction over the defendant, venue is proper in this district.

### C.  Transfer of Venue

The defendant asks the Court to transfer this case to the District of Connecticut under 28 U.S.C. § 1404(a). A district court may transfer any civil case, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as

well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). However, a plaintiff's choice of forum should rarely be disturbed, and only a strong showing of inconvenience to a defendant would be enough to necessitate venue transfer. *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951).

The plaintiff argues persuasively that Michigan is the appropriate forum. The plaintiff chose Michigan, resides in Michigan, is incorporated in Michigan, and was harmed in Michigan. Moreover, even if the defendant would be inconvenienced by this forum, shifting the inconvenience from one party to another is not a reason to grant the motion to transfer. *See Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1023 (E.D. Mich. 2002). Michigan is an appropriate forum in this case.

### III.

The plaintiff has established a *prima facie* case for specific personal jurisdiction over the defendant. Venue is proper in this district, and there is no basis to transfer venue for the convenience of the parties.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss or change venue [dkt. #9] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   December 29, 2015

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 29, 2015.

> s/Susan Pinkowski
> SUSAN PINKOWSKI